Here are the next case, United States v. Lapointe. Good morning, Your Honors. My name is Peter Tamayo and I represent the appellant Frank Lapointe. With me at council table is William Timmons, who is appearing here pro bono as co-counsel and he appeared in the case below. Your Honor, this is a case in which the sentencing judge sentenced Mr. Lapointe to a sentence of 13 years, 156 months, which was greater than the guideline range, was greater than the mandatory minimum, and was greater than what the government asked for without stating any reason for doing so. Your Honor, on that basis alone, this case ought to be reversed and remanded because the Supreme Court has held, and this Court has repeated many times, that a sentencing court has a responsibility not only to consider the arguments of the parties, but also to set forth the reasons for the sentence imposed. Without more, the record just shows an arbitrary and capricious sentence. The dictionary definitions of both arbitrary and capricious bring in the concept of reason, and there's nothing in this record which shows the reasoning of the district court in terms of the sentence which was ultimately imposed. The statements, the findings of facts from the PSR were adopted, right? Well, they were adopted, but in that regard, it's also hard to understand how he could adopt them because on one hand he says, I'm adopting them, and then he adopts a sentencing calculation, which is at odds with both the PSR and the addendum to the PSR. And the judge at no time explains what factors he's accepting, what factors he's not giving weight to, and he's putting, he's issuing a sentence that is devoid of that reasoning. So I say that's very important. You know, when you look at that statement of reasons, which if it's a meaningless piece of paper, I guess, then we don't have to look at it. But if it's supposed to have meaning, if it's supposed to give this Court a basis to understand and to review a sentence, it's useless. It at no place states the reason for the difference. You know, he indicates, Judge Johnson, who I have great respect for, indicates that he is going to upwardly depart, and then he doesn't check off any of the boxes to explain what the basis is, which would be the bare minimum of what he had to do. The government seems to rely on our decision in Espinoza as its principal authority. And can you explain why that wouldn't be applicable here? And I guess the argument is that the district court made clear on the record he read the relevant submissions, he cites two of the 3553 factors, and he says that he's adopting the factual findings in the PSR. Well, I think the reasons are for the reasons that Your Honor stated in the panel decision in Varencia, which is that it's got to be more than just stating the mere reasons. There has to be an explanation to give the public an understanding and the parties an understanding of what the basis for the sentence is, and to give this Court the ability to make sure this wasn't just arbitrary. As I said before, the dictionary definition of arbitrary is acting without reason. And I would argue that this is a classic case in which the Court acted without reason. But you're asking for remand . . . you're asking us to remand to a different judge. I think that would be . . . For resentencing. But isn't that something that is reserved for cases where there are serious doubts about the judge's fairness and impartiality? I don't read your briefs to suggest doubts about fairness or impartiality. Well, Your Honor, I think this is a case where this whole process is a fairly troubling process, and I think we have to look at the difference between reasoning and justification. If it goes back to Judge Johnson, he's going to be going back with the idea, explain why you came up with this. But he had that opportunity twice to do that, and he didn't do it. So what's he going to do? What's anybody going to do? He's going to go back and try to justify what he did in the past. We think the only fair thing here to do is to send this case back for de novo resentencing. This was not a trial. There was no fatical hearing in this case. He didn't sit through an evidentiary process. We go back before a new judge, we're going to know that the judge is considering the You know, I want to point out, Your Honor, that part of the unfairness of this case is the way that this whole request for the additional time even came up. The government justified the sentencing calculations that were in the plea agreement up to two days before the sentencing, and their table of contents is wrong. Their letter to the court asking for the upper departure was two days before the sentencing, and then for the first time, they come in and they ask for more time. You know, they point out, and correctly, that in their plea agreement, they don't give up the right to request an upper departure, but neither did they reserve it. And I've seen many plea agreements, I know this court has seen plea agreements in which the government specifically says, hey, defendant, these are the guidelines, but we're reserving the right to look for other factors and to go to the court for more time. You know, they got the plea agreement, they had a waiver of appeal up to 135 months, and then they pushed to get that whole 135 months. Again, it was on EVA trial, the . . . I'm sorry, the EVA sentencing, and even at sentencing, if you look at the sentencing transcript, it's a little odd because Judge Johnson starts by asking the defendant to make a statement, then he asks defense counsel, then the government makes a motion for an increased sentence, and then he says, okay, I'm done. He doesn't even give them another chance to respond. So it's a troubling matter in all respects. I would point out that under the local rules in the Eastern District, the case actually should go back to another judge unless the chief judge finds that it's in the interest of judicial economy to have it go back to the same judge. I think it would be prudent to go back to a new judge, have this case re-sentenced, and make sure that the reasons are all fully stated on the record. Thank you. Assistant United States Attorney Kevin Trowell from the Eastern District of New York. May it please the Court. More than seven months passed between the defendant's plea on February 6, 2015, and his sentencing on September 25. During those months, the parties engaged in extensive pre-sentencing litigation in which the government filed three letters to probation and a letter to the court discussing the defendant's objections to the PSR and the guidelines calculation set forth in that PSR. In the government's letters, it addressed each of the defendant's factual assertions, and as the appellant correctly points out, took the position that the guidelines calculation in the plea agreement was correct. By the time the parties appeared for sentencing on September 25, there were no remaining disputes. The defendant had withdrawn his application for a fatical hearing, he had withdrawn all of his factual disputes with the PSR, and the parties were in agreement about the applicable guideline range. So although the investigation was lengthy, touching on three continents, two organized serious crimes, the sentencing was actually quite simple. There were no issues for the district court to resolve when the parties appeared. Now, in a- Doesn't the court have some kind of obligation when it's imposing a higher above guideline sentence to be more descriptive in its explanation? I think what the court has said, Your Honor, is that, or what the cases suggest, is that there's a rule of proportionality. So and I think the appellant cites to the relevant cases, as Your Honor noted, Judge Livingston, Espinoza and Vrancha. In Espinoza, the district court had before it an objection to a four-level enhancement that brought the defendant's sentence from a level 38 to a level 42. The result of that swing was a 98-month increase in the bottom end of the guidelines. The court did not address that objection. And after the fact, having adopted the PSR, the court looked to the Statement of Reasons and said that enhancement is supported. Here what we're talking about is a far smaller enhancement, a 36-month increase above the guidelines. Three years longer, and the government advocated for 135 months, didn't it? It did, in the letter, yes, Your Honor. And the district court gave 21 months longer, right? As is the district court's want under Caveira and any number of cases that put the duty to judge the facts before it in the hands of the district court. In this case, there was absolutely no shortage of information before the district court. The government filed an extremely lengthy sentencing letter, quoting from recordings citing all of the crimes that the defendant had committed. There was no objection to any of those facts, to any of the arguments made by the government, to the government's repeated assertion both to the probation department and to the court that the court had the authority under the guidelines to upwardly depart based on conduct that was not otherwise taken into account by the guidelines. What do we make of the fact that the district court left the entire variance section of the Statement of Reasons form blank? I think not much, Your Honor. I think in this case, what we have here is a sentencing proceeding that looks very much like a number of sentencing proceedings that this court has affirmed. The court heard extensive argument with no objection. Defendant didn't object to a single thing the government said in either the letter or in its presentation. Is there another case where we have ever upheld, without explanation, a sentence that is above the guidelines range? I mean, Espinoza did not involve that, as you know. Correct. But I think, not that the government is aware of, but I think from the government's perspective, what's relevant in those cases, I understand that the court has talked about above-guideline sentences as being different. But Espinoza, I think, stands for the proposition that a four-level increase resulting in a 98-month swing in the bottom end of the guidelines can be sustained if the facts in the PSR support it. Here, there's simply no doubt that given two crimes with 120-month mandatory minimums, a conspiracy to import 500 kilograms of cocaine from Guyana to Italy, there's simply no doubt that the record provides ample support for the sentence imposed. And I think for those of us who were in the room at the time, and I think this is apparent from the cold record even, the government had a lengthy argument, laid out the defendant's case, and the court was surprised, including the defendant. The defendant didn't object to the process, said nothing about the number. There's ample support, and the government's arguments just prior to the sentencing, this is much like the court has said in the past, we all understood what the court had done. Rejected the defendant's suggestion that because he's a family man, a 120-month sentence was appropriate, and accepted the government's undisputed representation and the PSR's undisputed facts about the extraordinary breadth and seriousness of this defendant's crimes. And given all of those facts, the court imposed a sentence that was well within the range of reason under Caveira in any number of the court's cases, and nobody disputes that. So I think in light of all of those factors, the fact, to return to your question, the fact that we're talking about an above-guideline sentence, I think, is not the salient fact. The salient one is that we're talking about a relatively small increase compared to other cases where this court has found that an adopted PSR is sufficient to support the sentence imposed. If there are no further questions, Your Honor, the government will rest on its brief. Thank you. If I may, Your Honor, I think what we lose track of in the government's argument is, is this sufficiency as opposed to reason. The government is asking the court to do is to substitute its reasons for the district court's reasons, and to say, well, the district court must have meant this because the record supports it. These information in the record supports it. I don't agree, from my reading of the record, and I wasn't there, but Mr. Timmons was, that there was a . . . this was expected, or that everybody understood it. My understanding is it moved . . . that proceeding moved very quickly, there was a busy day in the court, and there was not a great deal of opportunity, and that this kind of came out of the blue. There was no notice of the judge . . . by the judge, he was considering an upper departure or a variance above the guidelines, or above what the government was asking for, which itself was above the guidelines. And I would say that, you know, ten years ago, this court, in the case we . . . one of the cases we cited, Sindema, said that the considerations that ought to be put forward should be sufficiently compelling or to agree necessary to support the sentence imposed. It didn't say the facts had to be sufficiently compelling. It said the justification and the reasoning had to be compelling. So we don't know what the judge considered. What he says is, I listened to them, and I listened to them, and they're all right, and I'm going to give this sentence. And there's no way of following the reasoning for this court to be satisfied that it wasn't just arbitrary and capricious. I would also argue, Your Honors, to consider the effect of the mandatory minimum. Mandatory minimum sentences are purely a congressional decision as to what a punishment ought to be. It focuses only on punishment. Obviously, the Federal Sentencing Act, the considerations are much broader. We would argue that in considering a variance, the judge ought to . . . should have started not with 120 months, but with the 70 to 87 months, which the guidelines calculated, and agreed were the appropriate guidelines for this case, and to ratchet up from there. If you look at that, this is almost twice the sentence that the guidelines that he found were applicable to this case. And there has to be more justification than just a simple statement of the reasons. Sorry, simple statement that he read what each side said. Those are two separate obligations under the law, and he had to perform both of them. He said he performed the first, but he certainly failed in the second. That is to state the reasons. And we think for all those reasons, and the reasons we've put forth in our brief, we would ask the Court to reverse and remand for re-sentencing before a different judge. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision. The final two cases, United States v. Romaine and United States v. Layden, are on submission. The Clerk will adjourn court.